IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER G. SCRUGGS, | } |
| Plaintiff, | } |
| | } CIVIL ACTION NO. |
| v. | } |
| | } 2:14-CV-1329-WMA |
| THE WATER WORKS BOARD OF THE | } |
| CITY OF BIRMINGHAM, | } |
| Defendant. | } |

**MEMORANDUM OPINION**

This action comes before the court on a motion to dismiss filed by defendant The Water Works Board of the City of Birmingham ("the Board") on August 26, 2014 (Doc. 6), seeking dismissal of plaintiff Christopher Scruggs's action as stated in the original complaint, and on a motion to dismiss filed by the Board on September 29, 2014 (Doc. 13), seeking dismissal of the action as stated in Scruggs's amended complaint. This court has jurisdiction under 28 U.S.C. § 1331. For the reasons stated below, the Board's original motion to dismiss will be denied as moot, and its second motion to dismiss will be granted in part and denied in part.

**BACKGROUND**[1]

Scruggs, a black man, began work for the Board in October 2005, as a Utility Worker. (Doc. 12 at 3, ¶¶ 7, 10). In April 2011,

---

[1] Pursuant to the standard of review applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(6), all of Scruggs's factual allegations, as stated in the amended complaint, will be taken as true. *See M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006).

1

he filed an internal written complaint against Reginald Nall, one of his supervisors, alleging threats of adverse employment action. (Doc. 12 at 4, ¶ 13). In September 2011, he filed a written complaint against Melvin Cloud, another supervisor, alleging a hostile work environment due to harassment and threats. (Doc. 12 at 4, ¶ 14). In July 2013, Scruggs filed two such complaints against a white coworker, Adam Pruden, alleging misconduct, a refusal to work, and violations of the employer's code of conduct. (Doc. 12 at 4, ¶¶ 15-16).

On November 30, 2013, Scruggs and Dewey Blackston, a white coworker, were dispatched to make a repair at the home of Heather Lewis. (Doc. 12 at 4, ¶ 17). Three days later, the Board was contacted by Lewis's father, who complained that Scruggs had charged Lewis for the repair and immediately accepted payment in the amount of $250 (Doc. 12 at 4, ¶ 18), even though the customer was not responsible for the cost (Doc. 7-1). Scruggs denied the allegations. (Doc. 12 at 5, ¶ 19). Blackston provided a statement regarding the incident, though he withdrew it and provided another statement because "his first statement included false information and omitted pertinent details." (Doc. 12 at 5, ¶ 20).

The Board placed Scruggs on paid administrative leave on December 16, 2013. He was fired three days later. (Doc. 12 at 7, ¶¶ 23, 24). Blackston, on the other hand, was suspended for five days. (Doc. 12 at 6, ¶ 28). Scruggs filed a charge of discrimination with

the EEOC on December 27. (Doc. 7-1). On the EEOC form, he checked the boxes to allege discrimination based on race and age, but not retaliation. His allegations appear as follows:

> I am Black. I am also in the protected age group. I was hired to work for the above named employer on October 25, 2005, as a Utility Worker I. Prior to my discharge I was classified as a Utility Worker II. On November 30, 2013, Dewey Blackston, a similarly situated younger White employee, and I were dispatched to a customers' residence on an emergency service call. The repair required was not on the customer's property; therefore, the City of Birmingham was responsible for the cost of the repair. On December 2, 2013, I was informed by the Superintendent Mike Arrington that I was being accused of using organization time and equipment for unauthorized or personal purposes. Specifically, Mr. Arrington informed me that the customer reported that she paid me for the cost of the repair, which I deny. On December 16, 2013, I was placed on administrative leave with pay pending the outcome of an investigation. On December 26, 2013, I received a letter which was dated December 19, 2013, informing me that the decision was made to terminate my employment. Upon information and belief Mr. Blackston was not placed on administrative leave or subjected to the investigative process. Mr. Blackston also remains employed.
> I believe that I have been subjected to discrimination because of my race Black in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe that I have been subjected to discrimination because of my age in violation of the Age Discrimination in Employment Act of 1967, as amended.

(Doc. 7-1). Scruggs appealed his termination to the Board on January 7, 2014, but the Board upheld his termination and denied him reinstatement on January 22, 2014. (Doc. 12 at 6, ¶ 26).

Scruggs received a Notice of Rights from the EEOC and timely commenced this action on July 10, 2014. (Doc. 12 at 6, ¶ 26). In his original complaint, he asserted claims for race discrimination

and retaliation under Title VII of the Civil Rights Act of 1964, as amended. (Doc. 1). The Board filed its first motion to dismiss on August 26. (Doc. 6). In response, Scruggs sought and was granted leave to amend his complaint (Docs. 10, 11), which he did on September 15 (Doc. 12).

In the amended complaint, Scruggs again asserts claims for race discrimination and retaliation under Title VII, as well as under 42 U.S.C. § 1981. He claims that the Board treated him differently than similarly situated white employees "with respect to the terms and conditions of his employment, including but not limited to scrutiny, discipline, termination, and denial of reinstatement." (Doc. 12 at 7, ¶ 32). Scruggs alleges that race was a "substantial or motivating factor" in the disparate treatment. (Doc. 12 at 7, ¶ 34). He lists Dewey Blackston, Jed Rowan, and Adam Pruden as comparators. (Doc. 12 at 7, ¶ 33). Scruggs also claims that he was subjected to a hostile work environment based on his race and that he was subjected to retaliation after reporting his supervisors' and Pruden's conduct to Human Resources and after filing his EEOC charge. (Doc. 12 at 7-8, ¶ 39-43). The Board again moved to dismiss the action on September 29, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 13).

## DISCUSSION

**A. The Original Complaint and Motion to Dismiss**

The Board moved to dismiss the original complaint on August

4

26, 2014, to which Scruggs responded by requesting and receiving leave to amend; he filed his amended complaint on September 15. "As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (quoting *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006)). Because Scruggs's claims in his original complaint are now abandoned or superseded, the Board's first motion to dismiss will be denied as moot. *See Washington v. Potter*, No. 1:09-CV-1774-JOF-RGV, 2010 WL 2635647 (N.D. Ga. Apr. 16, 2010) ("Since plaintiff has abandoned the claims asserted in her original complaint, it is RECOMMENDED that defendant's motion to dismiss plaintiff's original complaint, [Doc. 7], be DENIED as moot.").

**B. The Amended Complaint and Motion to Dismiss**

In its second motion to dismiss, the Board advanced four arguments in favor of dismissal; three are well taken. As explained below, the second motion will be granted in part and denied in part.

**1. Claims under 42 U.S.C. § 1981**

In his response to the motion to dismiss, Scruggs voluntarily abandoned his race discrimination and retaliation claims under 42 U.S.C. § 1981. (Doc. 15 at 10). Such claims will consequently be

dismissed.

### 2. Exhaustion of Administrative Remedies

"Prior to filing a Title VII action . . . a plaintiff first must file a charge of discrimination with the EEOC." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). Scruggs filed such a charge on December 27, 2013. (Doc. 7-1). The Board, however, presents two challenges to the sufficiency of the charge: (1) no conduct occurring before November 30, 2013, is alleged in the charge, so claims based on such conduct are barred; and (2) an EEOC charge must be filed within 180 days of the alleged unlawful conduct, so Scruggs's claims regarding conduct occurring prior to June 30, 2013, are barred. (Doc. 13-1). Because the Board's first given reason is plainly sufficient, there is no need to consider the second.

"[A] 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gregory*, 355 F.3d at 1280 (quoting *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Id.* at 1279 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). "Judicial claims which serve

to amplify, clarify, or more clearly focus earlier EEO[C] complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (quoting *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980)). "Courts are nonetheless 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII],'" so "'the scope of an EEOC complaint should not be strictly interpreted.'" *Gregory*, 355 F.3d at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61, 465 (5th Cir. 1970)).

Even interpreting Scruggs's EEOC complaint liberally, it does not support all of the allegations contained in the amended complaint. In the EEOC charge, Scruggs only alleges discrimination based on one incident — the November 30, 2013, repair and subsequent discipline. (Doc. 7-1). He discusses the details of the service call, the accusations against him, and his suspension and termination. He did not include a single word concerning former complaints about his supervisors or coworkers, acts that he now claims sparked retaliation against him. These claims clearly do not appear in the EEOC charge; neither could the claims "reasonably be expected to grow out of the charge of discrimination," *Gregory*, 355 F.3d at 1280. The purpose of the exhaustion requirement is to give the EEOC notice of potential violations and to allow the EEOC the first opportunity to investigate, but Scruggs's charge in no way

provided the EEOC with any notice of his prior complaints and possible retaliation, or even with any reason to further investigate such a possibility.

Scruggs contends that he should not be penalized for failing to check the "Retaliation" box on the charge form, especially since his charge was filed without assistance of counsel. *See Gregory*, 355 F.3d at 1280 (finding that the charge alleged facts supporting a retaliation claim, even though the plaintiff failed to check the appropriate box). Even forgiving the failure to check the box, Scruggs alleges absolutely no facts relating to retaliation, so the court's finding that he failed to exhaust his administrative remedies is not a penalty for failing to check the appropriate box; rather, it is a finding that he alleged no facts to put the EEOC on notice of a potential retaliation claim. *See Green v. Elixir Industries, Inc.*, 152 Fed. App'x 838, 840-41 (11th Cir. 2005).

Scruggs has, however, asserted one retaliation claim that is permissible. In his amended complaint, Scruggs alleges that he was retaliated against for filing the EEOC charge, when the Board subsequently denied his appeal and application for reinstatement. (Doc. 12 at 8, ¶ 43). Retaliation for filing an EEOC charge does not need to be separately exhausted, since it could reasonably be expected to grow out of the original charge. *See Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) ("'[I]t is unnecessary for a plaintiff to exhaust administrative remedies

prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.'") (quoting *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A 1981)).

Therefore, Scruggs failed to exhaust the required administrative remedies in regards to all claims of discrimination and retaliation occurring prior to the November 30, 2013, incident, so all such claims are due to be dismissed.

### 3. **Plausibility under *Twombly* and *Iqbal***

The Board contends that each of the counts in the amended complaint fails to meet the pleading requirements set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "'accep[t] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff.'" *M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)). A complaint must, however, "state a claim to relief that is plausible on its face" to survive such a motion. *Twombly*, 550 U.S. at 570. The Supreme Court has identified two working principles for district courts to apply in determining plausibility. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In Count I of the amended complaint, Scruggs alleges discrimination based on race in violation of Title VII. (Doc. 12 at 6-7). A prima facie case of discrimination under Title VII exists if the plaintiff shows that: "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).

The Board argues that Scruggs has not pled sufficient facts with regard to his alleged comparators to give rise to an inference of discrimination. In order to satisfy the similarly situated prong, particularly in an action involving misconduct, "the plaintiff must show that the 'employees are similarly situated in

10

all relevant respects. . . . In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Knight v. Baptist Hosp. of Miami*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).

Scruggs names three white coworkers as comparators in his amended complaint: Dewey Blackston, Jed Rowan, and Adam Pruden. (Doc. 12 at 7, ¶ 33). As to the latter two, the complaint alleges no facts to show that they are similarly situated to Scruggs. This is not the case, however, as to Dewey Blackston. Scruggs alleges that Blackston is a white male who was dispatched with Scruggs to Lewis's residence on November 30, 2013. (Doc. 12 at 4, ¶ 17). After the incident, Scruggs was suspended and terminated, and his appeal and request for reinstatement were denied, while Blackston was only suspended for five days. (Doc. 12 at 5-6, ¶¶ 23-29). These allegations are sufficient to establish Blackston as a potential comparator, particularly in light of the Supreme Court's instruction that "[t]he burden of establishing a [Title VII] prima facie case of disparate treatment is not onerous," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The Board argues that Blackston is not a sufficient comparator because: (1) Scruggs does not allege that Blackston was involved in charging the customer for the repairs; and (2) Scruggs alleges that

11

Blackston made a false statement about the incident. (Doc. 13-1 at 8-9). First, while a more specific allegation as to Blackston's conduct would be helpful, this court will not find Blackston to be an insufficient comparator simply because such an allegation is missing. The court is instructed to draw all reasonable factual inferences in favor of the non-movant, *M.T.V.*, 446 F.3d at 1156, and such an inference would be that because Blackston was present and involved in the repair and was subsequently disciplined, he was also involved in the alleged improper charging. While this may need to be proven at a later stage, the court will draw this reasonable inference presently and find Blackston to be a sufficient comparator. As to the false statement Blackston gave, this does not disqualify his comparator status — because Blackston was sufficiently involved in the November 30 incident, this additional misconduct does not prevent Scruggs from alleging his prima facie case. Therefore, Blackston is, as of now, a proper comparator. Accordingly, Scruggs has alleged a prima facie Title VII violation for race discrimination, and Count I states a plausible claim for relief.

The Board also seeks dismissal of Count II (Retaliation under Title VII). The Board's arguments relate only to incidents that were not included in Scruggs's EEOC charge; those aspects of the claim are already due to be dismissed for non-exhaustion. The Board makes no argument for dismissing Scruggs's claim of retaliation for

filing the EEOC charge, so Scruggs's retaliation claim will not be dismissed to the extent that it alleges such retaliation.

### 4. Punitive Damages

In his amended complaint, Scruggs seeks an award of punitive damages. (Doc. 12 at 9). Punitive damages are permitted for Title VII violations, but only against non-governmental entities. 42 U.S.C. § 1981a(b)(1) (2012) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . . ."); *see also Scott v. Estes*, 60 F. Supp. 2d 1260, 1274 (M.D. Ala. 1999) ("Governmental entities are expressly exempt from punitive damages under Title VII . . . ."). The Board is a public corporation created under Ala. Code § 11-50-230 *et seq. See Water Works and Sewer Bd. of City of Birmingham v. Shelby Cnty.*, 624 So. 2d 1047, 1048 (Ala. 1993). Therefore, Scruggs's claims for punitive damages will be dismissed.

A separate order will be entered.

DONE this 20th day of October, 2014.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE